**Jimmy Craig BOWERS,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

**No. 1–1085A264.**

Court of Appeals of Indiana,
First District.

Feb. 17, 1986.

Rehearing Denied March 27, 1986.

---

David A. Deem, Hart, Bell, Deem, Ewing & Stuckey, Vincennes, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for plaintiff-appellee.

1. IND.CODE 35–43–2–1.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, Jimmy Craig Bowers (Bowers), initiates this interlocutory appeal from a ruling by the Knox Circuit Court denying his pre-trial Motion to Dismiss his Information alleging burglary, a Class B felony.[1] Bowers filed his pre-trial Motion to Dismiss on September 23, 1985, on the ground that he had a binding agreement with the State to dismiss the charges against him in exchange for information he supplied pertaining to other unrelated criminal activity. The trial court's findings and ruling on the motion were issued following a full hearing on September 24 and 25, 1985.

Judgment affirmed.

## STATEMENT OF THE FACTS

On July 3, 1984, at approximately 3:00 a.m., Bowers was arrested in Vincennes, Indiana, in connection with an alleged burglary. Before noon on the same morning, Bowers was involved in a series of negotiations with police officers in Vincennes and a Deputy Prosecuting Attorney. According to the trial court's findings, there was an agreement between the deputy prosecutor and Bowers to the effect that should Bowers give information concerning a Davy Williams of a sufficient quantity to be "fruitful" in obtaining a search warrant against Williams, any charges against Bowers pertaining to his arrest would be dismissed. The trial court also found that the information Bowers provided did prove fruitful in obtaining and executing the search warrant, fulfilling the terms of the agreeement. Subsequent to the arrest of Williams, the State filed the Information in dispute here against Bowers on July 5, 1984.

## ISSUE

Whether the trial court erred in denying Bowers' Motion to Dismiss.

## DISCUSSION AND DECISION

Before addressing the merits of this appeal, the State raises a procedural issue asserting that Bowers waived any issue in his Motion to Dismiss for failure to comply with the statutory time requirements under IND. CODE 35–34–1–4. Bowers counters by asserting that according to IND. CODE 35–34–1–4(b), a motion to dismiss may be made at any time before trial under IND. CODE 35–34–1–4(a)(11) on any ground that is a basis for dismissal as a matter of law.

■ Bowers apparently did not state in his motion the specific ground under which he was claiming relief, nor apparently did the State object during the hearing that the motion was not timely. Since there is a ground upon which the trial court could have allowed the motion to be filed, we cannot say the trial court was in error in allowing Bowers to proceed on the motion.

Turning to the merits of this case, Bowers' argument is based on the notion that the agreement is enforceable under contract law, and the State should be estopped by all theories of law, equity, public policy, due process, and fundamental fairness from prosecuting the charges against him.

While not specifically stating so, Bowers here is requesting more than a motion to dismiss the charges against him according to the agreement. Under IND. CODE 35–34–1–13(b):

"In any case where an order sustaining a motion to dismiss would otherwise constitute a bar to further prosecution of the crime charged, unless the defendant objects to dismissal, the granting of the motion does not bar a subsequent trial of the defendant on the offense charged."

Bowers does not indicate that the motion to dismiss here would be in any way objectionable but in fact requests this relief. A dismissal in this regard is not tantamount to an acquittal since jeopardy has not yet attached and there has been no adjudication of guilt or innocence. *Copeland v. State* (1961), 242 Ind. 290, 178 N.E.2d 463. *See Swinehart v. State* (1978), 268 Ind. 460, 376 N.E.2d 486. Therefore, absent any allegation of prosecutorial vindictiveness which has not been done here, *see Hughes v. State* (1985), Ind.App., 473 N.E.2d 630, *trans. denied,* the prosecutor could dismiss the charges as agreed and later re-file them unless Bowers is seeking a form of acquittal through the agreement as a bar to all further prosecution on the alleged crime.

■ Even assuming the relief Bowers requests is to bar further prosecution on the charges filed against him, his reliance on arguments of contract, public policy, and integrity of the legal system must fail. In *Bullock v. State* (1979), Ind.App., 397 N.E.2d 310, the court clearly held that an agreement between the State and a defendant to dismiss a charge in exchange for testimony in an unrelated case was not an enforceable contract and rejected the notion that this type of case could be properly resolved by contract law. Resort to arguments questioning the integrity of the legal system for this result were unpersuasive to the court in *Bullock,* and arguments seeking equitable enforcement of such agreements on public policy grounds were equally unavailing in *Rihl v. State* (1980), Ind. App., 413 N.E.2d 1046. Where a prosecutor agrees to delay or dismiss a prosecution, it is void as against public policy, even though the prosecutor's actions may have been inspired by worthy motives. 8 I.L.E. *Criminal Law* Sec. 19 (1971). *See State v. Bain* (1887), 112 Ind. 335, 14 N.E. 232.

■ In *Rihl, supra,* the court noticed three underlying factors in cases involving agreements between representatives of the State and a defendant: "(1) the involvement of the prosecutor; (2) at least nominal approval by the court; and (3) some detriment to the defendant by the State's failure to abide by its bargain." *Id.* at 1053. In the case at bar, the court found that Bowers had an agreement with the deputy prosecutor, and we agree that a deputy prosecutor, as representative of the State, was cloaked with the authority of the prosecutor's office to enter into agreements with a defendant. *Crose v. State* (1985), Ind.App., 482 N.E.2d 763. However, there

was no prior approval of the agreement by a court empowered to do so, and Bowers incurred no detriment by the State's breach sufficient to justify equitable enforcement of the bargain. Our legislature has sanctioned agreements between the State and a defendant in the areas of immunity and plea agreements but only upon court supervision and approval. Bowers argues that the principles underlying immunity and plea agreements do not apply since he is basing his argument on principles of contract law. Nevertheless, these legislative provisions are instructive.

The immunity statutes are somewhat analogous to the plea bargaining statutes in that both are a means for the State to deal with recalcitrant, but essential witnesses. *Walters v. State* (1979), 271 Ind. 598, 394 N.E.2d 154. The courts have given prosecutors wide discretion under their statutory powers, *Neeley v. State* (1983), Ind., 457 N.E.2d 532, but the legislature has limited their bargaining power in the areas of immunity and plea bargaining. In *In re Contempt Findings Against Schultz* (1981), Ind.App., 428 N.E.2d 1284, *trans. denied*, this court construed IND. CODE 35–6–3–1 (currently IND. CODE 35–37–3) to confer only use immunity. Prior to this case, the appellate courts refused to enforce agreements between the State and a defendant based on theories of contract law in *Rihl, supra,* and in *Bullock, supra.* Subsequently, the immunity statute was amended, effective 1982, reflecting the *Schultz* decision and specifically granted only use immunity. IND. CODE 35–37–3–2, 3. Where the legislature adopts prior judicial interpretation in a re-enacted statute, prior interpretation is prima facie evidence of legislative intent. 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION Sec. 49.09 (4th ed. 1984). No provision was made to extend the prosecutor's power to contract with defendants without court supervision. Regardless of whether the legislature was aware of the prior decisions refusing to enforce such bargains under contract law, the purposes under the immunity statutes are analogous to those under the plea bargaining stat-

utes, *Walters, supra,* and the construction of statutes regarding the same subject matter are to be given harmonious effect to each, i.e. in pari materia. *Ogle v. St. John's Hickey Memorial Hospital* (1985), Ind.App., 473 N.E.2d 1055, *trans. denied.*

While both use immunity and plea bargaining are devices for the State, neither are enforceable without court supervision and approval. Where a defendant is compelled to testify to facts which may incriminate him, use immunity prevents that testimony from being used in a subsequent trial against him, but it does not protect him from all prosecutions to which his compelled testimony relates. *Schultz, supra.* It is the court's duty to determine if a defendant's privilege against self-incrimination is jeopardized before a prosecutor may request a court to grant use immunity IND. CODE 35–37–3–2. When there is any error in this procedure causing detriment to a defendant, only then may we consider enforcing the agreement. Bowers' privilege was never jeopardized nor has he incurred any detriment. A defendant entering a plea of guilty forfeits several guaranteed rights, and it is the court's duty to advise him of these rights; determine if they are voluntarily waived or not produced by any further promises, force, or threats; and determine if there is a factual basis for the plea. IND.CODE 35–35–1–2 & 3. Any plea agreement obtained contrary to the statutes' directives causing detriment to a defendant is unenforceable, and a defendant is not entitled to specific performance of the agreement. *Bullock, supra.* No guilty plea was exchanged in the agreement here nor was there any court supervision to protect the rights of the defendant.

Neither statute permits a prosecutor to grant acquittal or full transactional immunity, nor do they prevent the State from prosecuting the defendant on the pending charges subject to the agreement. Not only is Bowers' contract theory invalid, but to grant the apparent relief requested would go beyond the powers already con-

ferred by the legislature and cause disharmony to the legislative scheme.

Judgment affirmed.

ROBERTSON, P.J., concurs.

RATLIFF, J., dissents with opinion.

RATLIFF, Judge, dissenting.

I agree with Judge Shields in her dissenting opinion in *Bullock v. State* (1979), Ind. App., 397 N.E.2d 310, 313–14, that permitting the prosecutor to renege on his agreement undermines the credibility and integrity of our criminal justice system. The majority here relies heavily upon the majority opinion in *Bullock*. Because I agree with the dissent of Judge Shields and believe *Bullock* was wrongly decided, I must dissent here.

Further, I believe other cases relied upon by the majority are clearly distinguishable. In *Neeley v. State* (1983), Ind., 457 N.E.2d 532, our supreme court held an agreement to forgo adding an habitual offender count was not violated by adding an habitual offender count to another unrelated charge. Thus, the *Neeley* court found no violation of the prosecutor's agreement, which is quite unlike this case where there is a clear violation.

In *Rihl v. State* (1980), Ind.App., 413 N.E.2d 1046, the agreement granting immunity from prosecution was made by the arresting officers. The prosecutor did not become aware of it until shortly before trial. Here, the agreement was made by the deputy prosecutor himself. *Rihl* found, under the circumstances of that case, that "the factors which may justify equitable enforcement of an agreement between a representative of the State and a defendant on public policy grounds simply are not present here." 413 N.E.2d at 1053. In this case, those factors are present. Bowers agreed to provide information to the state in exchange for the state's promise to dismiss if information provided by Bowers proved fruitful. Bowers fully complied with his agreement. The information he provided in fact proved fruitful. The state got the benefit of Bowers' perform-

ance of his agreement, but Bowers was rewarded by the state's repudiation of its agreement. Bowers now stands charged of charges the state agreed to dismiss. This is unfair, reprehensible, and destructive of public confidence in the legal system.

Other courts have found ways to enforce such agreements. Sometimes the decision has rested upon whether or not there was prior court approval, but enforcement of such agreements made without court approval has been achieved in some cases. *See generally* 21 Am.Jur.2d, *Criminal Law*, section 221–222 (1981). In a proper case, we should find it within our power to require a prosecuting attorney to keep his agreement with a defendant who, in reliance thereon, has fully performed his part of the agreement. This is such a case.

Therefore, I dissent.